FILED

2019 SEP 26

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CAL.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2019 Grand Jury

| UNITED STATES OF AMERICA, | CR No. CR00580-CAS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Distribute Methamphetamine; 21 U.S.C. § 963: Conspiracy to Import Methamphetamine Into the United States; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Possession with Intent to Distribute Methamphetamine; 18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 18 U.S.C. § 2(a): Aiding and Abetting] |
| JUAN CARLOS BANUELOS-RAMIREZ, VICTOR SEVILLA-BLANCO aka "Vicente Sanchez," ALFREDO RODRIGUEZ-CANCINO, ALEXANDRO GONZALEZ, aka "Alex," and JOSE ENRIQUE GASCA-ZAMORA, aka "Enrique," | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[DEFENDANTS BANUELOS, SEVILLA, AND RODRIGUEZ]

A.  OBJECT OF THE CONSPIRACY

Beginning in or about August 2018, and continuing until in or about April, 2019, in Los Angeles and Riverside Counties, within the Central District of California, the Country of Mexico, the State of Washington, and elsewhere, defendants JUAN CARLOS BANUELOS-RAMIREZ

("BANUELOS"), VICTOR SEVILLA-BLANCO also known as "Vicente Sanchez" ("SEVILLA"), and ALFREDO RODRIGUEZ-CANCINO ("RODRIGUEZ"), and others known and unknown to the Grand Jury, conspired with one another to knowingly and intentionally distribute at least 50 grams, that is, approximately 25.7 kilograms of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1. Defendant BANUELOS would obtain large quantities of methamphetamine from Guadalajara, Mexico and hide the methamphetamine in a concealed compartment inside a heavy machinery part.

2. Defendant BANUELOS would arrange for the machinery part to be shipped from Guadalajara, Mexico, to Tijuana, Mexico.

3. Defendant SEVILLA would drive the machinery part containing the methamphetamine from Tijuana, Mexico, to National City, California, and from National City, California to Los Angeles, California.

4. Defendant BANUELOS would notify the customer purchasing the methamphetamine when the machinery part containing the methamphetamine arrived in National City, California, and arrange for the machinery part containing the methamphetamine to be transported by defendant RODRIGUEZ from Los Angeles, California, to Seattle, Washington.

5. Defendant RODRIGUEZ would meet defendant SEVILLA in Los Angeles, California, transfer the machinery part containing the

2

methamphetamine from defendant SEVILLA's truck to defendant RODRIGUEZ's truck, and transport the machinery part containing the methamphetamine from Los Angeles, California, to Seattle, Washington.

6. Defendant RODRIGUEZ would receive payment of $250 per kilogram plus $1,500 for expenses to transport the machinery part containing the load of methamphetamine from Los Angeles, California, to Seattle, Washington.

7. Defendant BANUELOS would arrange to have payment shipped to him in Mexico by instructing the purchaser of the methamphetamine to deliver payment to various merchants or shipping businesses in the Los Angeles area, so that the funds could be sent to Mexico using the black market peso exchange.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, on or about the following dates, defendants BANUELOS, SEVILLA, and RODRIGUEZ, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and Riverside Counties, within the Central District of California, in the Country of Mexico, the State of Washington, and elsewhere, including, but not limited to, the following:

1. On August 10, 2018, using coded language, defendant BANUELOS informed an individual he believed to be a drug trafficker, but who was, in fact, a law enforcement confidential informant ("Confidential Informant"), that defendant BANUELOS could sell Confidential Informant approximately 26 kilograms of methamphetamine and send the methamphetamine from Guadalajara, Mexico, to Seattle, Washington, inside a hidden compartment constructed in a machinery part.

2. On August 10, 2018, using coded language, defendant BANUELOS offered to give half the load, 13 kilograms, to Confidential Informant at his cost of approximately $1,000 per kilogram, if Confidential Informant would sell the remaining 13 kilograms of methamphetamine at approximately $7,000 per kilogram on behalf of defendant BANUELOS.

3. On August 25, 2018, in text messages, defendant BANUELOS sent Confidential Informant photographs of the machinery part, a large industrial-sized gear, that was in Guadalajara being altered and prepared for use in smuggling the methamphetamine across the border between Mexico and the United States.

4. On September 5, 2018, in text messages, defendant BANUELOS sent photographs to Confidential Informant of the machinery part containing the load of methamphetamine after it had been loaded into a shipping crate.

5. On September 6, 2018, using coded language, defendant BANUELOS told Confidential Informant the method of transportation of the load of methamphetamine and the transportation fees they would have to pay.

6. On September 13, 2018, using coded language in a text message, defendant BANUELOS informed Confidential Informant that the machinery part loaded with methamphetamine had arrived in Tijuana, Mexico, after leaving Guadalajara, Mexico, on September 7, 2018.

7. On September 19, 2018, using coded language, defendant RODRIGUEZ informed Confidential Informant that the load of methamphetamine had arrived in National City, California.

8.  On September 20, 2018, in a text message, defendant BANUELOS sent Confidential Informant a photograph of the crated machinery part.

9.  On September 20, 2018, defendant SEVILLA transported the machinery part containing the methamphetamine to Los Angeles, California.

10. On September 20, 2018, in a text message, defendant RODRIGUEZ sent Confidential Informant a photograph of a Penske rental truck that defendant SEVILLA used to deliver the machinery part containing the kilograms of methamphetamine to defendant RODRIGUEZ in Los Angeles, California.

11. On September 20, 2018, using coded language, defendant BANUELOS discussed with Confidential Informant the $2,460 wire transfer Confidential Informant had already sent to defendant RODRIGUEZ on behalf of defendant BANUELOS.

12. On September 21 and 22, 2018, defendant RODRIGUEZ transported the machinery part containing the methamphetamine from Los Angeles, California, to Seattle, Washington.

13. On September 22, 2018, defendant RODRIGUEZ met with Confidential Informant in the parking lot of a Burger King in Seattle, Washington, delivered the approximately 25.7 kilograms of methamphetamine to Confidential Informant, and accepted payment for transportation fees from the CI of $8,000.

14. On September 22, 2018, following the delivery of the methamphetamine to Confidential Informant, defendant BANUELOS provided Confidential Informant with detailed instructions, including illustrations, using coded language in a call and text messages, on

how to open the hidden compartment to access the methamphetamine hidden within.

15. On September 24, 2018, using coded language in a text message, defendant RODRIGUEZ confirmed to Confidential Informant that defendant RODRIGUEZ had received a total of $8,000 from Confidential Informant in payment for transportation of the load of methamphetamine from Los Angeles, California, to Seattle, Washington.

16. On September 24, 2018, using coded language, defendant BANUELOS instructed Confidential Informant to deliver payment for transportation of the load of methamphetamine to defendant SEVILLA.

17. On September 26, 2018, using coded language, defendant SEVILLA agreed to meet Confidential Informant the following day to receive payment for the shipment of methamphetamine.

18. On September 26, 2018, in a text message, defendant SEVILLA sent Confidential Informant an address in Poway, California as the place to meet the following day, and, in the same message, identified himself as "Vicente Sanchez."

19. On September 27, 2018, during a meeting in Poway, California, defendant SEVILLA accepted $22,000 in transportation fees from Confidential Informant, as previously directed by defendant BANUELOS.

20. On October 31, 2018, in a text message, defendant BANUELOS sent Confidential Informant a breakdown of the amounts previously paid and the amount Confidential Informant still owed for the load of methamphetamine delivered on September 22, 2018.

21. On January 30, 2019, defendant BANUELOS accepted approximately $18,000 from Confidential Informant in payment for the

machinery part that had carried the load of methamphetamine from Tijuana, Mexico, to Los Angeles, to Seattle, Washington.

## COUNT TWO

### [21 U.S.C. § 963]

### [DEFENDANTS BANUELOS, SEVILLA, AND RODRIGUEZ]

A. <u>OBJECT OF THE CONSPIRACY</u>

Beginning in or about August 2018, and continuing until on or about February 1, 2019, in Los Angeles and Riverside Counties, within the Central District of California, the Country of Mexico, the State of Washington, and elsewhere, defendants JUAN CARLOS BANUELOS-RAMIREZ, VICTOR SEVILLA-BLANCO, also known as "Vicente Sanchez," and ALFREDO RODRIGUEZ-CANCINO, and others known and unknown to the Grand Jury, conspired with one another to knowingly and intentionally import into the United States from a place outside thereof at least 50 grams, that is, approximately 25.7 kilograms, of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), and (b)(1)(H).

B. <u>MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED</u>

The object of the conspiracy was to be accomplished, in substance, as set forth in paragraphs 1-7 of Section B of Count One of this Indictment, which are re-alleged here.

C. <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants BANUELOS, SEVILLA, and RODRIGUEZ, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and Riverside Counties, within the Central District of California, the Country of Mexico, the State of Washington, and elsewhere, including, but not

limited, to the overt acts set forth in paragraphs 1 through 21 of Section C of Count One of this Indictment, which are re-alleged here.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS BANUELOS, SEVILLA, AND RODRIGUEZ]

On or about September 20, 2018, in Los Angeles County, within the Central District of California, defendants JUAN CARLOS BANUELOS-RAMIREZ, VICTOR SEVILLA-BLANCO, also known as "Vicente Sanchez," and ALFREDO RODRIGUEZ-CANCINO, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 25.7 kilograms, of methamphetamine, a Schedule II controlled substance.

## COUNT FOUR

[18 U.S.C. § 1956(h)]

[DEFENDANTS BANUELOS, GONZALEZ, AND GASCA]

A. INTRODUCTORY ALLEGATIONS

1. Financial institutions typically charged fees for wire-transferring funds to or from Mexico, and to or from the United States. Additional fees often were charged for exchanging funds from Mexican pesos to United States dollars and from United States dollars to Mexican pesos. In order to avoid these costs, some businesses circumvented the legitimate financial system and employed a currency broker or "peso broker."

2. A peso broker was an individual in Mexico (or other country outside the United States), who charged a reduced fee for converting United States dollars into pesos in Mexico (or other corresponding local currency) through the use of an informal and illegitimate money transfer system. To accomplish this, the peso broker worked with an individual, such as a drug trafficker, who had United States currency (dollars) in the United States that the individual needed to bring to Mexico and convert to pesos but for which he could not use the conventional financial system, typically because the funds were the proceeds of illegal activity. The peso broker then found business owners in Mexico who bought goods from vendors in the United States and needed dollars in the United States to pay for those goods. The peso broker arranged for the drug trafficker's dollars in the United States to be delivered to the United States-based vendors, where they were needed to pay for goods purchased by the Mexico-based customers. In exchange, the peso broker paid the drug trafficker in Mexico in

pesos obtained from the Mexico-based businesses that purchased the goods and bought the narcotics proceeds dollars.

B. OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing until in or about April 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendants JUAN CARLOS BANUELOS-RAMIREZ, ALEXANDRO GONZALEZ, also known as "Alex," and JOSE ENRIQUE GASCA-ZAMORA, also known as "Enrique" ("GASCA"), and others known and unknown to the Grand Jury, conspired with one another to knowingly and intentionally transport, transmit and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States, to or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 18, United States Code, Section 1956(a)(2)(A).

C. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1. Defendant BANUELOS would obtain large quantities of methamphetamine from Guadalajara, Mexico, and arrange to sell and ship the methamphetamine to a purchaser in the United States.

2. Defendant BANUELOS would arrange to receive payment for the methamphetamine shipment by instructing the purchaser of the methamphetamine to deliver bulk United States currency in specified amounts to defendants GONZALEZ and GASCA.

3. Defendants GONZALEZ and GASCA would meet with the purchaser of the methamphetamine, or a representative of the purchaser, in the United States to receive partial payment each for the methamphetamine at the direction of defendant BANUELOS.

4. Defendants GONZALEZ and GASCA would use the black market peso exchange to send the funds they received on behalf of defendant BANUELOS to Mexico, by shipping the value of the funds to Mexico as merchandise to be sold in Mexico, with the proceeds to be returned to defendant BANUELOS.

D. OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants BANUELOS, GONZALEZ, and GASCA, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and Riverside Counties, within the Central District of California, the Country of Mexico, the State of Washington, and elsewhere, including, but not limited to, the following:

1. On August 10, 2018, using coded language, defendant BANUELOS informed Confidential Informant that defendant BANUELOS could sell Confidential Informant approximately 26 kilograms of methamphetamine and transport the methamphetamine from Guadalajara, Mexico, to Seattle, Washington.

2. On September 13, 2018, defendant BANUELOS arranged for the load of methamphetamine to be transported from Tijuana, Mexico to Los Angeles, California.

3. On September 19, 2018, defendant BANUELOS arranged for the load of methamphetamine to be delivered from Los Angeles, California to Seattle, Washington.

4. On September 22, 2018, defendant BANUELOS arranged for the load of approximately 25.7 kilograms of methamphetamine to be transferred to Confidential Informant in the parking lot of a Burger King in Seattle, Washington.

5. On September 24, 2018, using coded language, defendant BANUELOS instructed Confidential Informant to deliver a portion of the money from the supposed sale of the methamphetamine for transportation fees to defendant GONZALEZ, as part of defendant BANUELOS's proceeds for the load of methamphetamine.

6. On September 26, 2018, using coded language, defendant GONZALEZ told Confidential Informant to bring the money to defendant GONZALEZ's business, Marce Cargo, in the Los Angeles Fashion District.

7. On September 26, 2018, defendant GONZALEZ accepted $50,000 from Confidential Informant for defendant BANUELOS in payment for the methamphetamine.

8. On September 26, 2018, using coded language, defendant GONZALEZ told Confidential Informant of methods defendant GONZALEZ could use to transport money into Mexico.

9. On September 26, 2018, defendant GONZALEZ spoke to defendant BANUELOS on the telephone in the presence of Confidential Informant and told defendant BANUELOS, in coded language, that Confidential Informant had delivered the money to defendant GONZALEZ.

10. On November 6, 2018, defendant BANUELOS sent Confidential Informant defendant GASCA's telephone number and address as the person he wanted to receive the remainder of the money owed for the load of methamphetamine.

Case 2:19-cr-00580-SVW  Document 1  Filed 09/26/19  Page 15 of 15  Page ID #:15

11. On November 6, 2018, defendant GASCA agreed to meet Confidential Informant at defendant GASCA's place of employment in Norco, California, La Mina de Oro, so the CI could deliver the payment for the methamphetamine.

12. On November 6, 2018, defendant GASCA accepted approximately $45,000 from Confidential Informant and acknowledged it was proceeds of the sale of narcotics.

13. On November 6, 2018, defendant GASCA told Confidential Informant that he employed the black market peso exchange method of sending goods to Mexico in the place of bulk currency.

A TRUE BILL

/S/
Foreperson

NICOLA T. HANNA
United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

CAROL A. CHEN
Assistant United States Attorney
Chief, International Narcotics,
Money Laundering, and
Racketeering Section

JULIE J. SHEMITZ
Assistant United States Attorney
International Narcotics, Money
Laundering, and Racketeering
Section
15